CAUSE NO: 4:09cv2995 _____

| | | |
|---|---|---|
| KATHERINE A. SWILLEY | § | UNITED STATES DISTRICT COURT |
| Plaintiff | | SOUTHERN DISTRICT OF TEXAS |
| | § | HOUSTON DIVISION |
| V | § § § § | United States Courts<br>Southern District of Texas<br>FILED<br>SEP 1 4 2009<br>Clerk of Court |
| The City of Houston, | | |
| Defendant | § | A JURY IS DEMANDED |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, KATHERINE A. SWILLEY, Individually pro-se, Plaintiff brings this suit to challenge gender discrimination, retaliation for filing an EEOC complaint and retaliatory discharge after participating in an investigation related to her EEOC complaint.

### PARTIES

1. The Plaintiff Katherine A. Swilley is an individual who resides in Houston, Harris County, Texas.

2. The Defendant City of Houston is a political subdivision of the State of Texas, and may be served with process by serving the Mayor of Houston, Bill White, at 900 Bagby Street, 2nd Floor, Houston, Harris County, Texas.

## JURISDICTION

3. This is case is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C 2000e et. seq and to redress the deprivation, under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to the plaintiff under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. 1983

4. This court has jurisdiction of this case according to 28 U.S.C 1331 and 1343 and 42 U.S.C 2000e-3 (a)

5. Venue is invoked pursuant to 28 U.S.C 1391 and 42 U.S.C. 2000e-5 (f) (3)

## STATEMENT OF THE PLAINTIFFS CASE

6. Plaintiff, worked for the City of Houston for over 22 years most recently as Senior Police Officer with the Houston Police Department.

7. Plaintiff is also the founder of a community-based nonprofit organization, Texas Cops & Kids, Inc. which is a juvenile crime prevention program.

8. Plaintiff was honored by the Mayor of Houston's by being selected as one of his **"Bravo Award Winners"** in September, 2005 when she tackled *"a problem the Marshal's Division in the Houston Police Department was having serving arrest warrants in the courtroom."* At that time, her supervisors said that she was *"an incredible person with a true passion and mission in life."* They also stated that they wanted to publicly say, *"thank you"* to her *"for being another example of what makes Houston police officers so special."*[1] Mention was also made of her community service and contributions in relation to programs offered by Texas Cops & Kids, Inc.

9. Plaintiff was reassigned to Public Affairs May 06 at the request of Chief Hurtt to initiate his Kids at Hope program, Plaintiff primary responsibility was to be a **liaison officer** for the police department to coordinate a number

of events and activities to bring increase visibility for the program and attract additional support, funding, donations and contributions for the Kids at Hope program.

10. Plaintiff assignment as Liaison officer she also hosted several events for Chief Hurtt,

11. After months of reporting what she felt was discrimination and problems she was having in Public Affairs, on June 26, 2007 Plaintiff filed a complaint with EEOC for gender and retaliation.

12. A month after she filed her complaint with EEOC the Retaliation escalated.

13. This bring us to where we are today, on October 10, 2009 Plaintiff attorney wrote a letter to the City of Houston Human Resource Director informing the city that Plaintiff had reported discrimination to Sergeant Carter, and her complaint was not investigated, Plaintiff had been retaliated against for reporting and filing a discrimination complaint and feared ongoing retaliation.

14. On November 20, 2007, the city (HPD) initiated an investigation related to Plaintiff allegations in the October 19, 2007letter regarding the Sergeant not investigating Plaintiff complaints of discrimination.

15. On October 27, 2007 Plaintiff took off from work due to the extreme stress and humiliation of being falsely accused and having to accept a deal for charges she didn't commit during a previous investigation related to her first reports of discrimination. Plaintiff was later diagnosed with depression and anxiety attacks..

16. While the City had full knowledge that Plaintiff was in a **protected activity and participating** in the Houston Police Department's **investigation related to her EEOC complaint** the retaliation didn't stop, it escalated.

17. On November16, 2007, Plaintiff was subjected to increased surveillance and

Harassment. Plaintiff was instructed to call in everyday even as she used her vacation and comp time and while she was on FMLA, an email message from Sergeant Robinson, states " I'm advising you to call and advise a supervisor when you leave your residence for any reason not just a doctor's visit, i.e. going to the store, getting medicine, going to the hospital."

18. On October 29, 2007, an officer came to Plaintiff home stating he was responding to an alarm call. Plaintiff alarm had not gone off. The second time, an officer came to Plaintiff home stating he was responding to a call for help at Plaintiff address.

19. On February 6, 2008, two uniformed police officers, one a sergeant, were sent to my home to serve papers related to the administrative personnel committee meeting related to Plaintiff mental fitness. Clearly a violation of Department General Orders 200-24 which states, "If an employee has been identified for possible placement in the Program, the PCU will notify the employee in writing.

20. On March 7, 2008, Plaintiff received a 48-Hour notice for a Loudermill scheduled for March 12, 2008, and a letter stating that she was being "relieved of duty" because of "the pending results of an investigation into certain allegations of misconduct which have been raised against you." Up until this point, Plaintiff had no idea that she was under investigation, Obviously, the focus of the Internal Affairs EEOC investigation that resulted from Plaintiff attorney's October 19th letter had been turned from Sgt. Carter to Plaintiff.

21. On March 12, 2008 Plaintiff attended the Loudermill hearing where she was presented with false charges, frivolous evidence, and unsubstantiated allegations.

22. On March 14, 2008, Plaintiff received notice by telephone that she was officially terminated, after the defendant falsely accused her of being **untruthful** after she

participated in an investigation related to her EEOC complaint.

23. On May 29, 2008 HPD submitted a request to the State of Texas to separate Plaintiff's peace officer's license to ensure that she would be unable to obtain gainful employment at another law enforcement agency. Information on the F-5 Report states, Separation of Licensee from the State of Texas, for dishonorably discharged based on terminated for an administrative violations of truthfulness or insubordination. Information in the report is false and merely a pretext for the department's discrimination, retaliation and their illegal employment practice of retaliating against Plaintiff for filing an EEOC charge.

24. On October 22, 2008 the defendant responded to Plaintiff EEOC complaint. reasons provided was an attempt to justify Plaintiff indefinite suspension using reasons that were pretextual and false, Furthermore, the City of Houston's response is clearly an attempt to cover up the true motives and/or intentions behind Plaintiff indefinite suspension which was retaliation for her engagement in a protected activity.

25. Plaintiff has proof she is not guilty, however she was denied the rights to appeal the 15 days suspension, and her termination appeal was dismissed.

26. Plaintiff continue to suffer from the conduct of the defendant, defendant held Plaintiff unused vacation time for seven months after Plaintiff was terminated.

27. Plaintiff was denied a department retirement ID.

28. On March 09, 2009 two black male parked in front of home Plaintiff home.

29. On March 12, 2009 a Dead opossum was thrown in front of Plaintiff home with its throat cut, Plaintiff viewed this as retaliation and intimidation used by the department to threaten her life, because officers who break the code are looked at as a snitch. It is the equivalent of a death threat to silence one who speaks out.

30. The defendant, City of Houston Police Department is inconsistent with its application of rules and policies related to disparity in discipline and that the department has a practice and pattern of discrimination in administering disciplinary actions for misconduct involving ranking file males compared to female officers who "break the code of Silence" to report discrimination or file an EEOC complaint.

31. The defendant, City of Houston Police Department has a practice and pattern of retaliating against females officer and/or minority officers who "break the code of silence" to report discrimination and filing EEOC Complaints.

32. The defendant, City of Houston Police Department is was inconsistent in applying policies and procedures regarding disciplinary actions as it relates to Plaintiff indefinite suspension on March 14, 2008.

33. Plaintiff termination represented a retaliatory discharge would be a comparison of the severity of discipline taken against her compared to the severity of discipline taken against a male police Captain accused of bringing "reproach" on the Houston Police Department.

33. On or about August 25, 2008 Plaintiff became aware that Captain Ready a white male, who was her Captain when she was assigned to Public Affairs was recommended for termination for operating his security business out of Public Affairs on duty, in what's called "double dipping"

using his city computer, and police records, using police officers, and deleting emails during the investigation.

34. Captain Ready he remained on duty during both the internal and criminal investigations, and was transferred to a highly desirable position in Human Resources where he was placed in a position where he regulated the very practices he was accused to have violated extra employment. Clearly a violation of HPD General Orders 200-03 Misconduct Investigation which states an employee may be relieved of duty at any point during the course of a misconduct investigation when the resumption of duty may compromise the integrity of the department.

35. While Plaintiff were immediately relieved of duty removed from her position in Public Affairs based on false allegations of misconduct, and forced to be transferred of a less desired position.

36. Captain Ready was untruthful when he operated his security business for the last four years out of public affairs, when he knowingly and intentionally ripped off taxpayers for his own personal gain on city time. Captain Ready violated Department Generals Orders 200-08 Truthfulness, which states employees will not make false, untrue or misleading statements verbal or written; made by or authorized by the employee. Any statement or omission of pertinent information which intentionally, unknowingly, or recklessly misrepresents facts or misleads others will be considered a false statement. A violation of this policy may result in discipline up to and including indefinite suspension.

Instead Captain Dwayne Ready only received a "90-Day suspension" for a which is identified as more egregious offenses that was of criminal nature, abuse of official capacity related to inappropriate conduct, that involved thirty officers and fellow ranking file officers working for his security business on duty.

37. While Plaintiff was indefinitely suspended from her position as a Houston Senior Police Officer with 22 years of service, after the department falsely accused her of being **untruthful** after she participated in an investigation related to her EEOC complaint.

38. The defendant is inconsistent with its application of rules and policies related to disparity in treatment and that the department has a practice and pattern of discrimination in administering disciplinary actions for misconduct involving ranking file males compared to female officers who "break the code of Silence" to report discrimination or file an EEOC complaint.

39. Captain Ready suspension letter states: "I have been advised that within (5) days from the date shown on this receipt I may submit a written request to the Chief of Police to allow me to deduct time out of one of my cash valued PTO banks in lieu of serving this suspension(Positive Disciple). In the event that the Chief of Police elects to accept my offer, I will be allowed to work Extra Employment during the scheduled suspension date." Working extra jobs while on suspension is clearly a violation of Department General Orders 300-14

40. Plaintiff was punished for breaking the code, she not offer this opportunity or option to positive disciple or work extra job when she was suspension for 15 days.

41. Plaintiff September 17, 2007, 15 day suspension letter states "Officer Swilley is instructed not to work any Extra Employment during the period of this temporary suspension and waive any and all opportunity to apply for positive discipline.

42. Captain Ready waiver states "I acknowledge that I have consulted with my attorney who has fully explained my rights and options prior to signing this waiver and sign it of my own free will.

43. Plaintiff rights and options were not explained to her prior to signing the waiver. Plaintiff were instructed to direct questions to her attorney.

44. Plaintiff did not sign the waiver of her own free will, due to Plaintiff mental state.

## **CAUSE OF ACTION**

Gender Discrimination and Retaliation

45. The defendant, conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination against an individual on the basis of sex and retaliation against an individual for reporting such discrimination, and 42 U.S.C 2000e-3 (a) an employer may not take adverse action against employees who has made a charge, testified, assisted, or participate in <u>any</u> manner in an investigation, proceeding, or hearing.

46. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission issuance of a right to sue letter and have exhausted the EEOC administrative process.

### **Constitutional Violation**

47. The defendants', and its agents conduct violates 42 U.S.C. Section 1983, which prohibits deprivation of rights, privileges, or immunities secured by the constitution and law by those acting under color of law.

48. The defendants' conduct violates both the Equal Protection Clause of the First Amendment of the United States Constitution, and the Fourteenth Amendment to the United States

Constitution

49. The defendant has a pattern and practice, custom of ignoring discrimination complaints by females, taking little, if any, action against the perpetrators and attacks, punishing and blames the victim (female) officers who report discrimination or file an EEOC Complaint. Once females makes such claims they looked at as trouble makers and snitches, they are made example of with harsher punishment and months of systemic retaliation designed to force the victim out of the department.

50. The defendant has a practice and pattern of retaliating against females officers and/or minority officers who "break the code of silence" to report discrimination, or file EEOC, or assist officers in investigations related to an EEOC matter.

51. **The defendant's also were** negligent and reckless in violating **Plaintiff** U.S. Constitution under Title 42 Section 1983 due process law, by placing false Information in Plaintiff City and State personnel file making information public, thus violating Plaintiff liberty rights without due process of law. The reasons the defendant or **any other investigative agency** gave for Plaintiff indefinite suspension were just plain false.
The defendant response to EEOC Charge 460-2008-05141 is that the defendants were attempting to justify Plaintiff indefinite suspension using a reason that was pretextual and false.  Furthermore, the defendants response is clearly an attempt to cover up the true motives and/or intentions behind Plaintiff indefinite suspension which was illegal retaliation for Plaintiff reporting gender discrimination and filing a EEOC complaint, engaging in a protected and **participating** in the Houston Police Department's ("HPD" or the Department") **investigation of her complaint.**
As police officers and agencies of the city the defendants' conduct of untruthfulness in the investigation to the EEOC Investigator and the Hearing Examiner is extreme and outrageous.

52. **Defendant gave** Plaintiff a dishonorable discharge and place false information in plaintiff personnel file that have discredited Plaintiff name and destroyed her 23 years in law enforcement, making it impossible for her get a job in law enforcement, a career she loves.

53. This is type of unlawful conduct all because Plaintiff filed an EEOC complaint and participated an EEOC processing is extreme and outrageous an unacceptable by law in any professional, but outright shocking and egregious behavior and recklessly indifference to Title VII and the U.S. Constitution rights of Plaintiff and others who have been subject to this type of conduct by the defendant. And clearly proves intentional and recklessly with the intent to harm and inflict emotional distress to Plaintiff

54. The defendant is well-aware of the unwritten code of silence is standard operating procedure in the police department, and continues this long-standing custom that ignores complaints under title VII and retaliates against officers that speak out against misconduct. The code of silence is enforced by fear of retaliation, resulting in a disparate impact on females and minority officers who are suppressed from speaking out about discrimination in the department, they are attacked and their career in law enforcement is over.

55. The defendant is Consistent with their repeated deliberate indifference pattern of reckless disregard and abandonment of the statutes and provisions of the Civil Rights Act of 1964,

56. The defendant conduct of deliberate indifference to Civil Rights Act 1964 and Statutes, has created an environment that is predictable that egregious behavior will occur on officers that report discrimination.

## **Damages**

The damages suffered by the plaintiff include actual and compensatory damages for the injuries she suffered at the hands of the defendants including, but not limited to, her lost back pay income including unpaid wages, salary and income plus interest, her lost front pay including future wages, drop retirement account package plus interest, pain and suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of reputation and good standing in the community, the workplace and among peers, attorneys' fees, and punitive damages arising from the devastating effect that the discrimination and retaliation have had and continue to have on her.

## EXEMPLARY DAMAGES

Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless deliberate indifference to the protected rights of Plaintiff. In order to punish said Defendants for engaging in a repeated pattern and practice of unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seek recovery from Defendants for exemplary damages

## SPECIFIC RELIEF

Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendants described hereinabove:

a. Prohibit by injunction the Defendants from engaging in unlawful employment practices; and

b. Reinstate Plaintiff to her position with back pay which Plaintiff held but for the unlawful employment actions of Defendants.

## **Relief Requested**

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of Title VII and U.S. C. 1983;

2. Enjoining and permanently restraining the violations of Title VII;

3. Declaring that the acts and practices complained of in this Complaint are in violation of the United States Constitution;

4. Enjoining and permanently restraining theses Constitutional violations;

5. Directing the defendants to pay plaintiff actual and compensatory damages that she suffered past and future;

6. Directing the individual defendants to pay plaintiff punitive damages in the highest amount allowed by law;

7. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

8. Awarding plaintiff the costs of this action, together with reasonable attorney's fees and expert witness fees;

9. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

10. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, KATHERINE A. SWILLEY, respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; exemplary damages, as addressed to each Defendant, together with interest as allowed by law; costs of court; and such other and further relief to which Plaintiff may be entitled at law or in equity.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury.

_/s/ K. Swilley_
KATHERINE A. SWILLEY
Pro-Se
10903 ENSBROOK
HOUSTON, TX 77099
TELEPHONE: 832-594-2025